IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RODERICK S. OATS, JR., #Y33510,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 23-cv-03037-SMY |
| ) | |
| **ANTHONY WILLS,** ) | |
| **JOHN DOE #1 C/O,** ) | |
| **C/O SANDERS, and** ) | |
| **M. MOLDENHAUER** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Roderick S. Oats, Jr., an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center. He claims Menard officers failed to protect him from an attack by another inmate and that his medical treatment was delayed. He seeks monetary damages and injunctive relief (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was housed in Menard's North 2 segregation unit on July 17, 2021. Before being taken to the recreational

1

yard, C/O Lewey conducted a strip search of Plaintiff, requiring him to remove all clothing, place his clothes and shoes through the cell bars to be shaken and searched by the officer, open his mouth, lift his tongue, shake his hair, raise his arms, bend over and spread his buttocks, squat and cough, and lift his genitals.  Plaintiff passed this inspection, got dressed, was placed in handcuffs and patted down, and was then checked for contraband with a hand-held metal detector.  This security procedure had been consistently used on Plaintiff before going to segregation yard (Doc. 1, p. 7).

Defendant C/O Sanders placed Plaintiff into the fenced cage area for recreation.  Instead of placing the inmates into the intake cage one at a time before removing their handcuffs (the usual procedure, to avoid one person being cuffed while another is not), Sanders put Plaintiff into the caged area with two other inmates at the same time.  Plaintiff protested, saying this was not proper because inmates have been attacked while handcuffed when another inmate is not cuffed.  Sanders told Plaintiff he would be OK.  When John Doe #1 C/O removed the handcuffs from one of the other caged inmates,[1] that inmate pulled out an unknown object and stabbed Plaintiff repeatedly, injuring Plaintiff's head and face (Doc. 1, p. 8).  Sanders ordered the inmate to stop and sprayed both him and Plaintiff with pepper spray.  The other inmate was placed back in handcuffs.

Officer Lewey took Plaintiff to the infirmary, where CMT Reva determined Plaintiff needed stitches.  As no qualified medical provider was on the premises, Reva called Defendant Nurse Practitioner Moldenhauer for instructions.  Moldenhauer told Reva he would come in to treat Plaintiff, so she did not need to send Plaintiff to an outside hospital (Doc. 1, p. 8).  About 30 minutes passed.  Another CMT took Plaintiff to an examination room to set up for Moldenhauer's arrival, and gave Plaintiff a tetanus shot (Doc. 1, p. 9).  Moldenhauer arrived 15-20 minutes later,

---

[1] Plaintiff does not give the name of this inmate, referring to him as "Inmate John Doe #2" (Doc. 1, p. 8).

explaining that he was delayed because he bought ice cream on the way in; he then left to put it away. Moldenhauer returned, administered Lidocaine, and closed the wound on Plaintiff's temple with six stitches.

C/O Lewey took Plaintiff back to the North 2 segregation unit infirmary bullpen. Officer Metcalf cuffed Plaintiff and took him to a different cell from where he was previously housed: Cell # 2-53 "behind the door" (Doc. 1, pp. 9-10). None of Plaintiff's property was in the cell. There were no hygiene supplies, clothes, or sheets, and the cell was covered in mold and dirt. Plaintiff asked Metcalf where his property was and why he was placed behind the door; Metcalf responded that he did not know or care.

Plaintiff remained in the cell covered in his own blood and pepper spray for four days. He asked every officer who passed by about his property. C/O Sparling ultimately brought Plaintiff's property to him, but half his items were missing. Sparling said he brought everything there was.

If John Doe #1 and Sanders had followed the ordinary protocols for placing inmates in the cage one at a time and properly searched the other inmates, Plaintiff would not have been assaulted. Defendant Warden Wills is responsible to ensure his officers follow such security protocols (Doc. 1, p. 10). Plaintiff requests monetary damages and a transfer away from Menard[2] (Doc. 1, p. 12).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1:    Eighth Amendment failure to protect claim against John Doe #1 C/O, Sanders, and Wills for failing to prevent the attack on Plaintiff by the inmate who was uncuffed in the recreation cage with him on July 17, 2021.

---

[2] The Complaint shows that when Plaintiff filed this case, he was housed at Pontiac, therefore, his request for a transfer from Menard has been rendered moot (Doc. 1, p. 1). *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (injunctive relief request is moot unless plaintiff can show "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here"). Additionally, the IDOC website shows that Plaintiff is no longer at Pontiac; he is currently housed at Lawrence Correctional Center. https://idoc.illinois.gov/offender/inmatesearch.html (last visited May 2, 2024).

> Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Moldenhauer for failing to promptly render medical care to Plaintiff for the stab wounds suffered on July 17, 2021.
>
> Count 3: Eighth Amendment claim for housing Plaintiff in a dirty cell without his property or hygiene supplies for four days following the July 17 2021 attack.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## Discussion

### Count 1

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To succeed on a claim for failure to protect, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Plaintiff's factual allegations state a viable Eighth Amendment claim against John Doe #1 C/O and Sanders for allegedly placing him in harm's way with an uncuffed fellow inmate despite his protests. Therefore, Count 1 will proceed against these two defendants. However, Plaintiff must identify John Doe #1 by name before he can be served with notice of this action.

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

The Complaint fails to state a claim against Warden Wills.  There is no supervisory liability in a § 1983 civil rights claim.  To be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  Plaintiff does not allege that Wills was present or aware of the other defendants' alleged conduct leading to his injury.  Accordingly, Wills will be dismissed from this claim without prejudice.

**Count 2**

Prison medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs.  *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).  To state such a claim, a prisoner must plead facts suggesting (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs.  *Id.*  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).

Here, Plaintiff clearly had an objectively serious medical condition – a stab wound that required stitches.  Moldenhauer arrived to provide this care approximately an hour after he was summoned.  While Moldenhauer's remark that he stopped to buy ice cream on his way was insensitive to Plaintiff's situation, this brief delay does not amount to a constitutional violation, nor does it fall outside the realm of acceptable medical care.  The Complaint does not indicate that Plaintiff's injury or pain became worse in the time he spent waiting for Moldenhauer to stitch his wound. Therefore, Plaintiff fails to state a viable deliberate indifference claim against Moldenhauer.  Count 2 will be dismissed without prejudice.

**Count 3**

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Relatedly, prolonged confinement in a dirty and moldy cell without hygiene supplies may violate Eight Amendment standards.

It is unclear whether Plaintiff intended to pursue a claim over his cell conditions for the four days he was held in the dirty cell. Further, he does not associate any defendant with this potential claim and does not say whether or from whom he requested cleaning/hygiene supplies or otherwise sought help to remedy the cell conditions. Thus, the Court cannot determine whether any individual may have been deliberately indifferent to his situation. Plaintiff may seek to amend his Complaint if he wishes to pursue the cell conditions claim further.

Plaintiff complains only about the delay in receiving his property and the loss of some of his items. A Fourteenth Amendment civil rights claim for a taking of property without due process of law cannot be maintained if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate remedy). Illinois provides such a remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999). For these reasons, Count 3 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Unknown/John Doe Defendant**

Plaintiff is responsible for securing information aimed at identifying John Doe #1 C/O, in accordance with the John Doe Identification Order that will be entered separately. Once the name

of the unknown defendant is obtained, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint. Menard Warden Wills, in his official capacity only, will remain as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown/John Doe #1 C/O.

## Disposition

The Complaint states a colorable claim in Count 1 against the John Doe #1 C/O and Sanders. Counts 2 and 3 and M. Moldenhauer are **DISMISSED** without prejudice. Defendant Wills (Warden of Menard Correctional Center) will remain in the action in his official capacity only, to assist with the identification of the John Doe #1 Defendant.

The Clerk shall prepare for C/O Sanders and Anthony Wills (Menard Warden) (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff was notified at the outset of this case that he must promptly notify the Clerk of Court of any change in his address (Doc. 4), yet he has failed to do so. Plaintiff is **THEREFORE ORDERED** to submit a written notice of his current address to the Clerk, within **14 days** of the date of this Order. If Plaintiff fails to do so, this action will be dismissed for failure to comply with an Order of the Court. FED. R. CIV. P. 41(b). As a one-time courtesy, the Clerk is **DIRECTED** to mail this Order to Plaintiff at Lawrence Correctional Center as well as to his address of record.

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  May 2, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

8

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.