IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODERICK S. OATS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3037-MAB |
| | ) |
| CODY SOWELS and | ) |
| ROBERT HOFFMAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Roderick S. Oats, Jr., an inmate in the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Doc. 1). The lawsuit stems from an incident on July 17, 2021, where Plaintiff was attacked by another inmate in the segregation yard at Menard (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment failure to protect claim against two correctional officers, who were later identified as Robert Hoffman and Cody Sowels (Doc. 7; Docs. 28, 37).

Defendants Hoffman and Sowels filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 52; *see also* Doc. 56). The Court previously denied Defendants' motion after concluding that an issue of fact existed as to whether Plaintiff submitted a timely appeal to the ARB that went

missing through no fault of his own (Doc. 70). Defendants, however, were provided the opportunity to continue pursuing the affirmative defense of exhaustion by requesting an evidentiary hearing to resolve the issue of fact identified by the Court (Doc. 70). *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants made a timely request for a hearing (Doc. 71), and it was held on December 4, 2025 (Doc. 80). After careful consideration of the documentary and testimonial evidence, the Court finds that Defendants have failed to carry their burden of proof on the affirmative defense of exhaustion and Plaintiff may proceed with his claim.

## LEGAL STANDARD

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In order to exhaust administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Relevant to the issue here, the Illinois Administrative Code provides that, within 30 days after the warden denies the grievance, the inmate has 30 days after the warden denies their grievance to appeal to the Administrative Review Board ("ARB") for a final determination by the Director of the IDOC. 20 ILL. ADMIN. CODE § 504.850(a), (d), (e).

While the Seventh Circuit "take[s] a 'strict compliance' approach to exhaustion . . . a prisoner need not exhaust remedies that are unavailable." *Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025) (citations omitted). Administrative remedies become

"unavailable" when, for example, prison officials altogether fail to respond to a properly filed grievance, fail to respond in a timely fashion, or otherwise use affirmative misconduct to thwart a prisoner from exhausting. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002).

"[F]ailure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Breyley v. Fuchs*, 156 F.4th 845, 848 (7th Cir. 2025) (citation omitted).

## DISCUSSION

As the Court stated in its previous Order, there is only one relevant grievance: emergency grievance #233-8-21, dated August 2, 2021 (Doc. 70, p. 2; *see also* Doc. 56, pp. 16–20 (copy of grievance and responses)). Records show, and the parties do not dispute, that the grievance was denied by the warden on September 23, 2021, and returned to Plaintiff the following day (Doc. 56, p. 20; Doc. 56-1). The only disputed issue of fact that required resolution was whether Plaintiff submitted a timely appeal to the ARB that went missing through no fault of his own, thus rendering the grievance process unavailable (Doc. 70, p. 8).

Plaintiff testified at the evidentiary hearing, as did Administrative Review Board (ARB) Chairperson Clayton Stephenson, Menard Correctional Center Grievance Officer Jeffrey Olson, and Menard Correctional Center Mail Room Office Assistant Courtney Buskirk (*see* Doc. 79, Doc. 80). The relevant portions of their testimony are recounted here.

Plaintiff asserted in his written submissions to the Court, and maintained at the evidentiary hearing, that he appealed to the ARB on September 25, 2021—two days after the warden denied the grievance (Doc. 1, pp. 4, 11 (complaint); Doc. 54, p. 2 (MSJ response); *see also* Doc. 56, p. 20 (grievance)). Specifically, he testified that he put the grievance in an envelope addressed to the ARB, then put the envelope in the bars of his cell to be picked up by a correctional officer and mailed out (*see also* Doc. 54, p. 2). When asked if he recalled seeing the envelope get taken, he firmly and assuredly said yes but then candidly admitted that he could not remember who the correctional officer was who took the envelope (*see also id.*).

Grievance Officer Olson testified that he worked as a correctional officer at Menard "for a couple years" beginning in January 2015. He confirmed that during his time as a correctional officer, inmates sent out mail by putting it in the bars of their cell for correctional officers to collect each night. Defendants did not present any evidence that the procedure changed at any time prior to September 2021 or that this method of collection was no longer a legitimate way for inmates to send out their mail.

Ms. Buskirk testified that after the outgoing mail is collected in the cellhouse, a correctional officer brings the bag of mail to the mail room, where it is processed and sent out. Any outgoing mail addressed to the ARB is considered legal mail, regardless of whether it is labeled as such. Legal mail gets priority; it is run through the postage machine and sent out the same day that it is received in the mail room.

Plaintiff stated in his written submissions and during his live testimony that, after putting his appeal in the outgoing mail on September 25, 2021, he did not hear anything

from the ARB over the course of the next approximately eight and half months, so he followed-up on June 16, 2022, by writing a letter to the ARB asking about the status of his appeal (Doc. 1, p. 11; Doc. 54, p. 2). Plaintiff further testified that he sent this letter to the ARB as legal mail so there was a record showing it was mailed out (*see also* Doc. 54, p. 2). Specifically, he filled out a voucher form titled "Offender Authorization for Payment," agreeing to have payment of postage for the letter deducted from his trust fund account, copies of which were submitted to the Court (Doc. 1, p. 17; Doc. 54, p. 7).[1] The writing on the voucher is largely illegible, but the Court can still make out a stamp indicating that it was received by the Mail Room at Menard sometime in June 2022, that 53 cents in postage was applied to the letter, and another stamp indicating that the letter was mailed out (*see id.*). ARB Chairperson Stephenson testified, however, that the ARB never received this letter (*see also* Doc. 56-2). And Plaintiff insinuated in his written submissions and during his live testimony that he never received a response to this letter (*see also* Doc. 1, p. 11; Doc. 54, p. 2).

Plaintiff testified that he wrote a second letter to the ARB on July 18, 2022, which included another copy of the grievance and the facility's response (*see also* Doc. 1, p. 11; Doc. 54, p. 2). Plaintiff testified that he submitted a money voucher with the July letter

---

[1] Plaintiff seems to be under the impression that he designated the letter as legal mail by submitting a money voucher for postage with it. That Court does not believe that to be the case because, as Ms. Buskirk testified, all mail addressed to the ARB is treated as legal mail. As the Court understands it from Ms. Buskirk's testimony, a money voucher is only used if the inmate does not have sufficient funds to pay the postage for their legal mail at the time they send it out. In this instance, it seems that Plaintiff used the voucher as a means of creating a record that he submitted his mail and that it was sent out. The Court does not know whether it was necessary for Plaintiff to use a voucher; that is, whether he had enough money in his trust fund account to cover the postage for his June 2022 letter.

(*see also* Doc. 54, p. 2), and he submitted a copy of the it to the Court (Doc. 1, p. 18; Doc. 54, p. 8). A stamp on the voucher indicates that it was received by the Mail Room at Menard (but the date is illegible), that $2.57 in postage was applied to the letter, and another stamp indicates that the letter was mailed out on July 20, 2022 (Doc. 1, p. 18; Doc. 54, p. 8).

Records show, and ARB Chairperson Stephenson confirmed, that the ARB received Plaintiff's letter on July 22, 2022 (*see* Doc. 56, pp. 17–20). Stephenson responded on behalf of the ARB on July 27, 2022, acknowledging Plaintiff's statement that he had submitted his appeal on September 25, 2021, but countering that the ARB had no record of receiving it (Doc. 56, p. 16). Stephenson confirmed at the evidentiary hearing that the ARB did not receive anything from Plaintiff in 2021. The ARB indicated that July 2022 was the first time they had seen the grievance, and they rejected it for being untimely (*Id.*).

ARB Chairperson Stephenson testified that he was never asked to destroy an inmate's appeal or to delay or withhold a response, nor is he aware of anyone else doing so. Similarly, Ms. Buskirk testified that she was unaware of any mail being lost, destroyed, or intentionally withheld. Grievance Officer Olson likewise testified that he was unaware of any grievance being destroyed, intentionally held in the mail room, or lost in the mail.

After carefully considering all of the evidence, the Court finds Plaintiff credible in his testimony that he submitted his appeal to the ARB on September 25, 2021, but it went missing through no fault of his own. The Court notes that Plaintiff's story has remained

consistent since the inception of this lawsuit. There were no apparent internal inconsistencies in his story. At the *Pavey* hearing, he stuck to the facts and made no attempt to embellish or tack on any new or additional details that he had not previously shared. Moreover, Defense counsel's questioning of Plaintiff at the *Pavey* hearing did not discredit, contradict, or cast doubt on Plaintiff's story in any meaningful way. Nor did the testimony of Defendants' witnesses.

Furthermore, despite Defendants' witnesses disclaiming any knowledge of grievances or mail being destroyed, going missing, or being withheld, the evidence clearly shows that something to that effect occurred in June 2022 with Plaintiff's first letter to the ARB. There is documentation that the letter was mailed out from Menard (Doc. 1, p. 17; Doc. 54, p. 7), but the ARB has no record of ever receiving it. If that letter went missing, then it is also very possible that Plaintiff's original appeal went missing.

For these reasons, the Court concludes that Plaintiff attempted to fully and properly exhaust his administrative remedies but his appeal to the ARB went missing through no fault of his own. The grievance process was thus rendered unavailable to Plaintiff, and he is therefore deemed to have exhausted his administrative remedies.

## Conclusion

Defendants failed to carry their burden of proof to show that Plaintiff failed to exhaust available administrative remedies. The Court finds that the administrative grievance process was rendered unavailable to Plaintiff, and therefore he is deemed to have exhausted his administrative remedies.

The matter of exhaustion of administrative remedies now being fully and finally

resolved in Plaintiff's favor, he may proceed with his Eighth Amendment claim against Defendants Hoffman and Sowels. The stay previously imposed on merits discovery, (*see* Doc. 47), is **LIFTED**. A new schedule setting forth discovery and dispositive motion deadlines will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: December 9, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
